UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIFTY QUARTER, INC. dba FRESHLY FOLDED,<br><br>Plaintiff,<br><br>v.<br><br>FRESH FOLDED LAUNDRY LLC, et al.,<br><br>Defendants. | Case No.: 3:22-cv-01080-RBM-BLM<br><br>**ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**[Doc. 8]** |

Defendants Fresh Folded Laundry, LLC ("FFL") and Bradley McGuire (collectively "Defendants") have filed a Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative, for Improper Venue. (Doc. 8.) Defendants argue this case should be dismissed for lack of personal jurisdiction because Defendants have no connection to California and have not directed any acts at California. (Doc. 8-1 at 2.[1]) California-based Plaintiff Nifty Quarter, Inc. ("Plaintiff") has filed an Opposition arguing Defendants' use of its trademarks, after settlement discussions and notice of consumer confusion, subject

---

[1] The Court cites the electronic CM/ECF pagination unless otherwise noted.

Defendants to jurisdiction in California.[2] Defendants have filed a Reply. (Doc. 11.) For the reasons set forth below the Court **GRANTS** the Motion to Dismiss based on lack of personal jurisdiction.

## I. BACKGROUND

### A. First Amended Complaint and Plaintiff's Exhibits

The First Amended Complaint ("FAC") asserts claims for trademark infringement, false designation of origin, cybersquatting, unfair competition, trademark dilution, and declaratory judgment. (Doc. 4.[3]) All of Plaintiff's claims are based on Defendants' use of Plaintiff's trademarks for "Freshly Folded" ("Marks") or confusingly similar names. (FAC ¶¶ 48, 53, 59, 66, 72, 76.) Plaintiff and Defendants are engaged in substantially similar services, *i.e.* laundry services. (FAC ¶¶ 17–18, 21, 26.)

Plaintiff alleges it has a federally registered trademark for "Freshly Folded" that it has used in southern California since October 2017 in advertising and marketing, including for promotion of its business through its website, on social media, and through other channels. (FAC ¶¶ 10–13.) The FAC asserts the Marks are distinctive, that Plaintiff has invested substantial time and resources marketing its services under the Marks, and its

---

[2] Plaintiff filed its Opposition twice. (Docs. 9–10.) The first filing was on November 1, 2023 (Doc. 9) and the second filing was on November 3, 2023 (Doc. 10). There is no explanation why it was filed twice, however, it appears the only differences are the way the exhibits are separately docketed in first filing, the inclusion of a mailing label with the second filing, and that the attachments to the first filing are in color. The Court has reviewed both filings but cites the second filing (Doc. 10) throughout this Order.

[3] Plaintiff filed five exhibits in support of its Opposition: (1) Emails from McGuire and Defendants' counsel (Doc. 10 at 27–29 (Exhibit A)); (2) Emails from McGuire regarding a settlement proposal (Doc. 10 at 30–32 (Exhibit B)); (3) McGuire email regarding "Fresh Folded Laundry" and cease-and-desist email from Plaintiff's counsel (Doc. 10 at 33–36 (Exhibit C)); (4) Nonfinal Office Action (Doc. 10 at 37–61 (Exhibit E)); and (5) Cease-and-desist letter sent by Plaintiff's counsel to Defendants (Doc. 10 at 62–68). The Court has considered these exhibits and summarizes them here in conjunction with the relevant allegations of the FAC.

investment in its services have resulted in its Marks signifying high quality laundry services. (*Id.* ¶¶ 14–16, 19–20.)

Plaintiff alleges Defendants have used Plaintiff's Marks in Defendants' business name and in advertising and marketing materials, initially using "Freshly Folded Laundry" and then switching to "Fresh Folded Laundry" after being contacted by Plaintiff regarding infringement. (FAC ¶¶ 24–30, 37.) The FAC also alleges that Defendants' use has included the domain names "www.freshlyfoldedlaundry.com" and "www.freshfoldedlaundry.com." (*Id.* ¶¶ 22–23.)

Plaintiff alleges Defendants' names are confusingly similar to Plaintiff's Marks and are likely to continue causing consumers to think Defendants' laundry services are associated with Plaintiff. (*Id.* ¶¶ 28–29, 44.) The FAC alleges this confusion is evident from individuals in West Virgina and surrounding areas contacting Plaintiff via emails and calls regarding Defendants' services and attempting to use Defendants' coupons and promotions with Plaintiff. (*Id.* ¶¶ 41–42.) Plaintiff asserts the confusion, particularly via digital mediums, has resulted in a decrease in customer registrations through Plaintiff's website. (*Id.* ¶ 42.)

The FAC also alleges the parties engaged in communications regarding Defendants' use of Plaintiff's Marks, including Plaintiff alerting Defendants to the alleged infringement and cease-and-desist communications. (*Id.* ¶¶ 30–40.) More specifically, Plaintiff alleges counsel for Plaintiff contacted Defendant McGuire August 24, 2021 regarding unauthorized use of Plaintiff's Marks, and that on September 10, 2021 Defendants' initial counsel acknowledged during a phone call that the use of the Marks was not authorized and constituted infringement. (*Id.* ¶¶ 30–31; Ex. A [Doc. 10 at 28][4].) The FAC goes on to allege that McGuire then fired his counsel and began communicating with Plaintiff himself

---

[4] The listing of Plaintiff's exhibits incorrectly identifies the first email as being dated August 24, 2022 (Doc. 10 at 26), however, consistent with the allegations of the FAC, the email is dated August 24, 2021. (*Id.*; FAC ¶ 30.)

3

and proposed to resolve the issues through a settlement in which Defendants would stop using "Freshly Folded Laundry." (FAC ¶¶ 32, 34.) During these communications, McGuire acknowledged there could be some confusion and proposed to stop using "Freshly Folded Laundry" in digital spaces and proposed that Defendants would acquire a new business and domain name. (*Id.* ¶¶ 33–34; Ex. B [Doc. 10 at 31].)

During further communications between Plaintiff's counsel, McGuire, and Defendants' new counsel, Defendants indicated they were switching the name to "Fresh Folded Laundry" and that McGuire had filed a trademark application for the new name. (FAC ¶¶ 35–39; Ex. C [Doc. 10 at 34–36].) On June 1, 2022, Plaintiff's counsel sent a cease-and-desist letter to Defendants objecting to Defendants' infringement, and providing Defendants with evidence of instances of customer confusion. (FAC ¶ 40; Ex. E [Doc. 10 at 62–68].) Defendants had not responded to the letter as of the filing of the FAC. (FAC ¶ 43.)

Defendants' trademark application for "Fresh Folded Laundry" (FAC ¶ 24) was refused by the United States Patent and Trademark Office ("USPTO") in a Nonfinal Office Action letter (Ex. D [Doc. 10 at 37–61].) The refusal is based in part on the likelihood of confusion with Plaintiff's "Freshly Folded" trademark. (*Id.* at 39 ("Registration of the applied-for mark is refused because of the likelihood of confusion with the mark in U.S. Registration No. … 6134986 (FRESHLY FOLDED).").)

The FAC's jurisdictional section asserts this Court has personal jurisdiction "because Defendants willfully and intentionally infringed on Plaintiff's trademarks, expressly targeting Plaintiff's business in El Cajon, California, for Defendants' benefit." (FAC ¶ 8.) Plaintiff alleges Defendants are aware their infringement is causing customer confusion and harm to Plaintiff in the Southern District of California based in part on Plaintiff notifying Defendant of instances of customer confusion. (*Id.*) Plaintiff offers and sells its laundry services in San Diego County. (*Id.* ¶ 17.) The FAC alleges Defendants have advertised and promoted their laundry services in West Virginia, Pennsylvania,

Maryland, and Washington D.C. through channels similar to Plaintiff, including digital marketing and social media platforms. (*Id.* ¶¶ 25–27.)

### B. Declaration of Bradley McGuire

Bradley McGuire is a named defendant along with FFL. (FAC ¶ 5.) His declaration, submitted in support of Defendants' Motion to Dismiss, indicates he is the Managing Member of Defendant FFL. (Decl. of Bradley McGuire ("McGuire Decl.") ¶ 1.)

McGuire is a resident of West Virginia, has been for the past 14 years, and has never lived in California. (*Id.* ¶¶ 5–6; FAC ¶ 5.) He has never owned or run a business in California and does not regularly visit California for business. (McGuire Decl. ¶¶ 6–7.) Consistent with the allegations of the FAC, FFL is a West Virginia limited liability company with its principal place of business in Charles Town West Virginia. (McGuire Decl. ¶¶ 8–9; FAC ¶ 4.) FFL is not registered to do business in California and provides its laundry services exclusively out of West Virginia. (McGuire Decl. ¶ 10.)

Mr. McGuire indicates that neither he nor FFL engage in any of the following in California: banking; own property, land, or a business; maintain offices or warehouse facilities; conduct any company meetings or other business physically in California. (*Id.* ¶¶ 13–17.) He also indicates that neither Defendant has any employees, managers, or sales representatives in California or provide laundry services in California to any California customers. (*Id.* ¶¶ 16, 19.) They also do not market FFL's services in California or take any actions targeting a California market. (*Id.* ¶¶ 18–19.)

FFL was originally Laundry Solutions LLC, amended its name to Freshly Folded Laundry LLC on April 1, 2021, and then changed it to Fresh Folded Laundry LLC on January 24, 2022. (*Id.* ¶ 8.) FFL promotes its services on the website https://freshfoldedlaundry.com. (*Id.* ¶ 8, Ex. 2 [Doc. 8-2 at 7–13] (Screen shots of freshfoldedlaundry.com).) The website targets customers in the Eastern Panhandle of West Virginia. (*Id.* ¶¶ 11–12, Ex. 2 [Doc. 8-2 at 8] ("[L]aundry facility servicing the Eastern Panhandle of West Virginia".)

///

## II. PERSONAL JURISDICTION

Defendants move to dismiss this case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Doc. 8-1 at 1–17; Doc. 11 at 3–10.) However, "[t]he plaintiff bears the burden of demonstrating that personal jurisdiction is proper." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) ("Although the defendant is the moving party on a motion to dismiss, the plaintiff bears the burden of establishing that jurisdiction exists."). When, as here, "the motion [to dismiss] is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Glob. Commodities Trading Grp., Inc.*, 972 F.3d at 1106 (quoting *Schwarzenegger*, 374 F.3d at 800).

When evaluating personal jurisdiction, courts "take as true all uncontroverted allegations in the complaint and resolve all genuine disputes in plaintiff's favor." *LNS Enters. LLC v. Continental Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Glob. Commodities Trading Grp., Inc.*, 972 F.3d at 1106). Courts "cannot 'assume the truth of allegations in a pleading [if] contradicted by an affidavit,'" but "[i]f both sides submit affidavits, then 'conflicts between the parties' statements contained in the affidavits must be resolved in the plaintiff's favor.'" *Id*.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,' our inquiry centers on whether exercising jurisdiction comports with due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG*, 571 U.S. at 125). "Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has 'at least minimum contacts with the relevant forum such that the exercise of jurisdiction does not

offend traditional notions of fair play and substantial justice.'" *Glob. Commodities Trading Grp., Inc.*, 972 F.3d at 1106 (quoting *Schwarzenegger*, 374 F.3d at 801).

There are two types of personal jurisdiction, general and specific, however, the Court considers only specific jurisdiction here because Plaintiff does not assert the Court has general jurisdiction.[5]  (Doc. 10 at 10–11.)

### A.     Specific Jurisdiction

"There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*  If the plaintiff meets its burden on the first two prongs, the burden "shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

---

[5] There are "two types of personal jurisdiction: 'general' (sometimes called 'all purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "A court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so 'continuous and systematic as to render them essentially at home in the forum State.'" *LNS Enters.*, 22 F.4th at 859 (quoting *Daimler AG*, 571 U.S. at 127).

Here, Plaintiff has not met its burden on the first prong of the specific jurisdiction test.

### 1. Purposeful Direction

The Court agrees with the parties, (Doc. 8-1 at 8; Doc. 9 at 11), that the purposeful direction test, rather than the purposeful availment test, applies here because the basis for Plaintiff's claims is trademark infringement. *See Herbal Brands Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (Applying purposeful direction test to trademark infringement claims).[6]

The purposeful direction test, "often referred to as the 'effects' test, derives from *Calder v. Jones*, 465 U.S. 783 (1984)." *Axiom Foods, Inc.*, 874 F.3d at 1069 (citation omitted). The "effects" test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)). "This analysis is driven by the *defendant's contacts* with the forum state—not the plaintiff's or other parties' forum connections." *Davis v. Cranfield Aerospace, Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023) (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014) and *Bristol-Myers Squibb Co.*, 582 U.S. at 265) (emphasis added).

"Under the effects test, … a defendant purposefully directs its activities toward the forum when the defendant has '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

---

[6] The analysis of the first "prong of the specific jurisdiction test turns on the nature of the underlying claims." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021); *see also Picot*, 780 F.3d at 1212 ("The exact form of [the] jurisdictional inquiry depends on the nature of the claim at issue."). Courts "generally use the purposeful availment analysis in suits sounding in contract and for unintentional tort claims" and the purposeful direction test applies to "intentional tortious or 'tort-like'" claims. *Herbal Brands Inc.*, 72 F.4th at 1090 (citations omitted); *see also Ayla*, 11 F.4th at 979 ("Trademark infringement is treated as tort-like for personal jurisdiction purposes").

state.'" *Ayla, LLC*, 11 F.4th at 980 (quoting *Axiom Foods, Inc.*, 874 F.3d at 1069). The first requirement of the purposeful direction test, the intentional act requirement, is met. However, the second requirement, express aiming, is not met.

### a) Intentional Act

"'Intentional act' has a specialized meaning in the context of the *Calder* effects test." *Schwarzenegger*, 374 F.3d at 806 (citing *Dole Food Co.*, 303 F.3d at 1111). "[I]ntent in the context of the 'intentional act' test [is] an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Id.*; *see also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) ("An intentional act is one denoting an external manifestation of the actor's will ... not including any of its results, even the most direct, immediate, and intended."). One court has described "[t]he threshold of what constitutes an intentional act" as "relatively low." *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014) (Summarizing acts meeting the requirement: sales transactions outside the forum state, advertising a product outside the forum state, and selling allegedly infringing products outside the forum state) (citing *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004), *Schwarzenegger*, 374 F.3d at 806, and *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012)); *see also CYBERsitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958, 969 (C.D. Cal. 2011) (collecting cases) (Summarizing conduct found to meet intentional act element including misappropriation and distribution of software code, placing an advertisement in a newspaper, reproducing copyrighted material, and operating a passive website).

Plaintiff relies on Defendants' use of Plaintiff's Marks or terms substantially similar to Plaintiff's Marks, particularly after Plaintiff objected to their use, including cease-and-desist letters, and provided evidence of customer confusion to Defendants. (Doc. 10 at 12–13.) Plaintiff also identifies Defendants' application for a trademark with the similar name

"Fresh Folded Laundry" and Defendants' continued us of it after telling the Plaintiff they would change the name to alleviate issues. (*Id.* at 12–14.)[7]

Plaintiff has alleged Defendants used the name Freshly Folded or substantially similar names in Defendants' business name and in Defendants' domain name after being notified of Plaintiff's Marks. Like placing an advertisement, reproducing copyrighted material, or operating a website, these are "actual physical act[s] in the real world" committed by Defendants that meet the intentional act requirement. *See Schwarzenegger*, 374 F.3d at 806 (citations omitted); *CYBERsitter*, 805 F. Supp. 2d at 969.

### b) Expressly Aimed

"The second prong of [the] test, 'express aiming,' asks whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Picot*, 780 F.3d at 1214 (citation omitted). "In applying this test, [courts] must 'look to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* (quoting *Walden*, 571 U.S. at 285). "Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum.'" *Ayla, LLC*, 11 F.4th at 980 (quoting *Walden*, 571 U.S. at 285).

Plaintiff relies on three district court decisions in attempting to establish express aiming. (Doc. 10 at 13–14 (citing *Lindoro, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1139–40 (S.D. Cal. 2016), *Fighter's Market, Inc. v. Champion Courage LLC*, 207 F. Supp. 3d 1145, 1152 (S.D. Cal. 2016), and *Adobe Systems Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 961 (N.D. Cal. 2015)).) Plaintiff relies on these cases for the proposition that personal jurisdiction is proper in a plaintiff's home forum when a defendant intentionally infringes on a plaintiff's intellectual property rights knowing the

---

[7] Defendants argue the "FAC does not allege that FFL or McGuire committed any intentional actions in California or directed any intentional actions into California." (Doc. 8-1 at 9.) However, this argument goes to the second element—express aiming—and is addressed below.

10

plaintiff is located in the forum state. *Id.* However, as explained in *Axiom Foods, Inc.*, this "individualized targeting" standard that relies on "a defendant 'engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state'" is no longer sufficient to establish express aiming. *Axiom Foods, Inc.*, 874 F.3d at 1069–70 ("In light of the Court's instruction in *Walden*, mere satisfaction of the test outlined in *Washington Shoe*, without more, is insufficient to comply with due process."). As explained below, Plaintiff's arguments rely on the individualized targeting test that is no longer sufficient to establish personal jurisdiction.[8]

      Plaintiff relies on *Lindora* to argue "[t]he express aiming requirement is satisfied, and specific jurisdiction exists, when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state", and that Defendants' knowledge of confusion through a cease-and-desist letter "is sufficient to turn what might otherwise be 'general economic activity' into the 'individualized targeting' of Plaintiff." (Doc. 10 at 13 (citing *Lindora, LLC*, 198 F. Supp. 3d at 1139–40).) Cease-and-desist letters and other communications like those alleged here can be significant under the individualized targeting test because they inform the defendant where the plaintiff resides and that the plaintiff alleges defendant's conduct is impacting the plaintiff. *See Lindora*, 198 F. Supp. 3d at 1140 (Finding that once the defendant received the letter it knew the plaintiff owned the marks at issue and was in California and "[t]his knowledge [was] sufficient to turn what might otherwise have been general

---

[8] To the extent these cases find express aiming on additional bases, they are distinguishable from this case because there are no allegations here that Defendants have engaged in any similar conduct directed at California. *See Lindora, LLC*, 198 F. Supp. 3d at 1139–40 (Identifying the following as strong evidence of targeting a California market: trainings, workshops, and annual conferences held in California; network of sales associates residing in California; and selling more products in California than any other state); *Adobe Sys. Inc.*, 125 F. Supp. 3d at 961 (Decision recognizes defendants sold infringing products in the forum state, but still relies on *Washington Shoe* test to find express aiming) (citations omitted).

economic activity into 'individualized targeting.'").  However, *Lindora* pre-dates *Axiom* and the portion of *Lindora* that found a cease-and-desist letter provided an additional basis for express aiming was applying the "individualized targeting" standard *Axiom* found insufficient.  *Lindora*, 198 F. Supp. 3d at 1140.  As noted above (*see supra* n.8), there were also additional reasons in *Lindora* for finding express aiming.  *Lindora, LLC*, 198 F. Supp. 3d at 1139–40.  As discussed below, there are no additional reasons to support express aiming here.  Defendants have no connection to California except allegations of "conduct affect[ing] [a] plaintiff[] with connections to the forum State [which] does not suffice to authorize jurisdiction."  *Walden*, 571 U.S. at 291.

Plaintiff cites *Fighter's Market* to argue that "[w]hen a tort is intentional, the court has found jurisdiction in the plaintiff's home forum because the acts are performed for the purpose of having their consequences felt in the forum state."  (Doc. 10 at 13 (citing *Fighter's Market*, 207 F. Supp. 3d at 1152–53).)  However, the same court that issued the *Fighter's Market* decision later rejected application of it.  *Medimpact Healthcare Sys., Inc. v. IQVIA Holdings, Inc.*, Case No. 19cv1865-GPC (LL), 2020 WL 1433327, at *10 (S.D. Cal. Mar. 24, 2020) (citing *Fighter's Market, Inc.*, 207 F. Supp. 3d at 1154).  "[I]n *Fighter's Market*, the court relied heavily on the now 'outdated' 'individualized targeting' theory of *Washington Shoe* and held that the Plaintiff satisfied the 'expressly aimed' requirement based on a prima facie showing that 'Defendant intentionally infringed Plaintiff's trademarks, knowing that the Plaintiff is a resident of California and the impact of infringement would be felt in California.'"  *Id.* (citing *Fighter's Market, Inc.*, 207 F. Supp. 3d at 1154); *see also Caracal Enters. LLC v. Suranyi*, Case No. 16-cv-05073-RS, 2017 WL 446313, at *3 n.3 (N.D. Cal. Feb. 2, 2017) (Explaining that *Washington Shoe* and *Fighter's Market* "have been cast into doubt by *Walden* … and *Picot* … which post-date *Washington Shoe* and require more than simply the plaintiff's residence in the forum state.").

Similarly, citing *Adobe Systems*, Plaintiff asserts "courts have held that specific jurisdiction exists where a plaintiff files suit in its home state against an out-of-state

defendant and alleges that defendant intentionally infringed on its intellectual property rights knowing the plaintiff was located in the forum state." (Doc. at 13 (citing *Adobe Sys. Inc.*, 125 F. Supp. 3d at 961).) Like the cases previously discussed, *Adobe Systems* also relies on the individualized targeting standard from *Washington Shoe* that *Axiom* found insufficient after *Walden*. *See Adobe Sys. Inc.*, 125 F. Supp. 3d at 961 ("[T]he Ninth Circuit has held that specific jurisdiction exists where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing the plaintiff was located in the forum.") (citing *Washington Shoe*, 704 F.3d at 675–76) (additional citations omitted); *see also Tangle, Inc. v. Buffalo Games, LLC*, Case No. 22-cv-7024-JSC, 2023 WL 2774452, at *4 (N.D. Cal. Apr. 3, 2023) ("The cases Plaintiff cites to [in] support [of] its individualized targeting theory all rely on precedent since overruled by *Walden*.") (citing *Adobe Sys., Inc.*, 125 F. Supp. at 960–61 and *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1105 (C.D. Cal. 2007)).

      Plaintiff cannot rely only on its residence in California and allegations Defendants infringed its Marks knowing Plaintiff was a California resident. *Defendants' contacts* with California, not Plaintiff's residence there, must determine specific jurisdiction. "After *Walden* and *Axiom Foods*, this court cannot conclude [Defendant] expressly aimed its conduct at California just because it knew plaintiffs resided there when it infringed their trademark." *Pinnacle Emp. Servs. Inc. v. Pinnacle Holding Co.*, No. 2:22-cv-01367-KJM-CKD, 2023 WL 2999970, at *3–4 (E.D. Cal. Apr. 17, 2023)) (collecting cases).

      This is not to say that allegations of individualized targeting cannot be considered. *Axiom*, 874 F.3d at 1070. It "may remain relevant", but "mere satisfaction of the test outlined in *Washington Shoe*, without more, is insufficient." *Id.* Here, *Defendants' conduct* does not connect them to California as required by *Walden*. Plaintiff and Defendants each operate laundry services locally in their respective states. (FAC ¶¶ 4, 17.) While Defendants' services might conceivably reach beyond West Virginia given its close proximity to neighboring states, not even Plaintiff alleges FFL is providing any services to anyone in California, marketing to California, selling any products in California, visiting

California, or otherwise engaging in any contacts with California. (*Id.* ¶¶ 25–27 (Defendants advertise and promote their laundry services in West Virginia, Pennsylvania, Maryland, and Washington D.C.).) The only connections between Defendants and California are based entirely on Plaintiff's residence here, including Defendants' communications to Plaintiff in California. These minimal communications related to Plaintiff's allegations of infringement only connect Defendants to Plaintiff. They have nothing to do with California. This is not sufficient. "[T]he defendant's 'own contacts' *with the forum*, not the defendant's knowledge of a plaintiff's connection to a forum" must drive the analysis. *Axiom Foods, Inc.*, 874 F.3d at 1070 (quoting *Walden*, 571 U.S. at 290) (emphasis added).

Similarly, Plaintiff's allegations of injury it has suffered in California are also not sufficient for express aiming. Assuming the truth of Plaintiff's allegations, it is suffering some level of harm from Defendants' use of its Marks based on decreased website registrations and confused customers. (FAC ¶¶ 41–42.) However, Defendants' "actions in [West Virginia] d[o] not create sufficient contacts with [California] simply because [Defendants] allegedly directed [their] conduct at [a] plaintiff[] whom [they] knew had [California] connections." *Walden*, 571 U.S. at 289. "[A] 'mere injury to a forum resident is not a sufficient connection to the forum.'" *See Picot*, 780 F.3d at 1214; *see also Morrill*, 873 F.3d at 1143 (citing *Walden*, 571 U.S. at 284–85) ("[T]he 'mere fact that a defendant's conduct affected [a] plaintiff[] with connections to the forum State does not suffice to authorize jurisdiction.'"). Defendants are not aiming any conduct at California and their only connection to the forum exists only because of Plaintiff's residence there.

Plaintiff has not made a prima facie showing of express aiming by Defendants. Because Plaintiff "has not established the second prong of the purposeful direction test, [express aiming, the Court] need not address the third prong." *Picot*, 780 F.3d at 1215 n.4. (citing *Schwarzenegger*, 374 F.3d at 807 n.1). "Failing to sufficiently plead any one of these elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*,

68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014) (Addressing three-part *Calder* effects test) (citation omitted).

As discussed above, the purposeful direction test is the first prong of the Ninth Circuit's specific jurisdiction test for torts or tort-like claims, and Plaintiff "bears the burden of satisfying the first two prongs of the test." *Herbal Brands Inc.*, 72 F.4th at 1090; *Schwarzenegger*, 374 F.3d at 802. Because Plaintiff has not established the first prong of the specific jurisdiction test, the Court need not reach the remaining prongs. *Schwarzenegger*, 374 F.3d at 802 ("If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.").[9] Plaintiff has not established personal jurisdiction in California. *Id.*

B.   **Jurisdictional Discovery**

Plaintiff requests that if the Court finds Plaintiff has failed to establish specific jurisdiction, the Court hold the motion to dismiss pending and permit Plaintiff to conduct jurisdictional discovery. (Doc. 10 at 23.) Plaintiff argues "it is possible" that Defendants may have had calls, emails, or other interactions with Plaintiff's customers that are confused by Defendants' infringement of their Marks. (*Id.* at 24.)

Jurisdictional discovery should be "granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts

---

[9] Defendants also sought dismissal of this case for improper venue under Rule 12(b)(3) because Defendants are not located in the Southern District of California and events giving rise to Plaintiff's claims occurred in West Virginia. (Doc. 8-1 at 17–18 (citing 28 U.S.C. § 1391(1)–(2)).) Section 1391(1) provides venue is proper in a "judicial district in which any defendant resides" and § 1391(2) provides venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Having dismissed the case for lack of personal jurisdiction, the Court need not additionally address dismissal for improper venue. The Court also notes that while Defendants very briefly mention a convenience transfer to the Northern District of West Virginia, it was only proposed as an alternative if the case was not dismissed and none of the analysis required for a convenience transfer under 28 U.S.C. § 1404(a) was briefed by either party. Plaintiff did not address it at all and Defendants' simply stated in two total sentences that they requested transfer in the alternative. (*See* Doc. 8-1 at 18; Doc. 11 at 10.)

is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Jurisdictional discovery may be denied when the request for it is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Id.* (citing *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).

First, the facts "bearing on the question of jurisdiction" are not controverted. *Id.* Plaintiff does not dispute the factual information Defendants provided by declaration regarding their lack of connection to California. Defendants largely do not dispute the Plaintiff's factual allegations regarding Plaintiff's Marks or the parties' pre-litigation activities and discussions.

Second, Plaintiff's suggestion that it is possible there are additional confused customers is "based on little more than a hunch", and it is unlikely that discovery will yield contacts sufficient to subject a West Virginia laundry services business operating only out of West Virginia to jurisdiction in California. *Id.* Not only is it speculative, but it also seems highly unlikely given the minimal confused customers identified by Plaintiff and that they were in West Virginia. Additionally, this is not a case where Plaintiff is likely to discover Defendants engaged in significant sales in California, targeted California markets, or otherwise engaged in conduct connecting them to California. Defendants' only connection to California is Plaintiff's location here, and the nature of Defendants' business—local laundry services—makes it highly unlikely Plaintiff would discover the necessary contacts between Defendants and California.

### III.   CONCLUSION

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED** and the case is **DISMISSED** with prejudice to refiling in this Court, but without prejudice to filing in a district where Defendants are subject to personal jurisdiction.

**IT IS SO ORDERED.**

Dated:  August 15, 2023

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE